And we have a change of counsel in this case, is that right? I believe we do for Zurich. Okay. Mary Spillane was originally arguing, but now Jerry Edmunds is arguing. Okay, very good. Thank you. Thank you very much. Okay, please proceed. Thank you, Your Honors. Good morning. My name is Heather Jensen, and I'm here representing Totem Bowl Investment and American Economy Insurance Company. May it please the Court, I would like to reserve two minutes of my time for rebuttal. Correct your time, but we'll try to help. Thank you. There's no question, is there, that if in fact Zurich did wrong, then they're primary and you're excess? That's right. Okay. And what I would like to focus on in my argument today, I'm sorry, Your Honors. Since you represent Totem Bowl, Totem Bowl is the owner of the strip mall? Correct. As the owner of the strip mall, it has certain duties under this law, right? And you have invitees in Washington. Yes. And as the invitee, what are the duties of the owner of the strip mall to its invitees? They're to maintain, to discover any dangerous condition, maintain the property in a safe manner for business invitees that are coming on the property. And they have the same duty, don't they, to those to whom they rent their premises? Yes. So they not only have a duty to those who come to the premises, but they have a duty to those to whom they rent the premises. Yes. Now, Totem Bowl entered into a lease, as I understand it. And in this lease with Cut-N-Up, trouble with Cut-N-Up, but in this lease with Cut-N-Up, it's my understanding that Cut-N-Up agreed to maintain insurance for its own particular property that it had in the lease. But as an offset to that in the contract, Totem Bowl agreed to maintain all of the premises that there were to get the customers to Cut-N-Up, correct? Correct. Well, I guess what I would say is in the lease, I'm going to say the salon. Well, let's say the salon. The lease says that they're responsible for the general outside repair and maintenance. It says they're responsible for exterior and structural maintenance. Correct. So I got the feeling from that then that under the lease that the salon required Totem Bowl to be responsible to make sure that they could get their customers to them. Correct. And then also... And so if that is so, why is it that when I go to the insured under the policy and I look at who the insureds are, why isn't Totem Bowl then an insured, even though not in the declarations, an insured otherwise under the policy? Because there's no question if they're designated in the declarations, they're insured. But there's another part of the policy that says whether they're an insured. And that is each of the following is also an insured. Any person or organization to whom you're obligated by virtue of a written insured contract, which means that's what you got here, to provide insurance such as afforded by this policy, but only respect to liability arising out of ownership, maintenance or use of that part of the premises leased to you. Well, as the owner of the premises leased to the salon, they had a duty under the lease. They have a general duty under the law of Washington to take care as an invitee. Correct. So I don't understand why you're focused so much about the declarations, nor do I find out why we're focused so much. I frankly find that the first guy from Zurich who looked at this policy probably gave Zurich pretty good advice, said at least for the duty to defend, we better get in there. Right. Your Honor, I have to shamelessly admit that sometimes when you are preparing for your oral presentation, the issues come into focus in a way that they didn't during the briefing. And my entire presentation today relates to the arising out of language and that definition of the insured as compared to the insured as totem pole as an insured under the declarations that it's just entitled to coverage under the policy without limitation. So relying just on the idea that totem pole was an insured by the insurance contract and is subject to the Roman numeral 2, number 2F definition. Counsel, before you go into that detail, though, following up on what Judge Smith said, we're talking here about the duty to defend. Correct. The indemnification issue is what you're really talking about here in a way is whether there is an arguable case that there should be an obligation to defend, I mean to indemnify. But in this case, as I understand it, we're just talking about the duty to defend. Correct. And based upon the language of the lease, which you, to your credit, conceded is correct, who is an insured and all of that, is there really any question about the obligation to defend, putting aside whether ultimately there is a duty to indemnify? Well, no question the duty to defend is broader than the duty to indemnify. And in this case, is there really any question that there was a duty to defend? I don't think so. So what are we talking about here then? Isn't that what this case is all about? Absolutely. Okay. And there was a refusal to defend and it was in bad faith. If I could put it this way, if under the terms of Zurich's policy, totem is an insured, we're finished. Correct. Don't need to look at anything else. That's right. Thank you. Thank you. Would you say that because we did look at something else, all of a sudden, oh, well, I dropped it. I think Washington law is clear that if you look at something else. Why should we have to look at anything else? We don't have to look at anything else. If we do, isn't the policy then to be construed against the person who drew it up? Correct. And to do so otherwise is bad faith. And the remedy for that is coverage by estoppel. Okay. Okay. Well, I think that essentially covers what I had to say. So I'll go ahead and sit down. Thank you. Very good. Mr. Edmonds. Jerry Edmonds for American, for Zurich American. Let me start with the very last thing you said. Where am I missing it? If you have to go outside the terms of the policy itself, then there has to be an ambiguity. And if there's an ambiguity in your policy, it gets construed against you. And if the construction against you makes Totem uninsured, you lose. Is that fair? It's fair if they're insured for the events alleged in this complaint, which I want to come back to. Is there a duty to defend? That's the point. If I may say. Just a minute. Let me ask you a very important question to me, who's been on your side many times, interpreting your kind of policies. When you had your insurance man say you should defend, why didn't you go forth and file a complaint for declaration? Well, that could have been done. Why didn't you do it? I was not sure. Don't you really think that because you didn't file for declaratory judgment, then the next problem comes Zurich acted in bad faith? Isn't that why complaints for declaratory judgment are filed? Isn't that the reason they do those? If you have any question under the duty to defend and you don't defend, then bad faith comes up, doesn't it? Well, respectfully. Doesn't it? It comes up as an issue. But may I say that the failure to file a declaratory judgment action does not itself. No, I'm not talking about whether it is of itself puts you in a problem. I'm just saying we've got another issue on here, whether you acted in bad faith. So if you've got, what is the duty to defend? Would you kind of explain that to me in Washington? Duty to defend in this case. Let's take it generally. What is your duty to defend in Washington? When do you have the duty? It starts with what the complaint says. Yes, and construed liberally, correct? Correct. Alleging facts if proven would impose a liability within the coverage? Correct. And it's broader than the duty to indemnify? Yes, it is. Okay, so under the complaint, the customer sued both Totem and the salon, alleging that they both had a duty to keep the stairs free of ice and snow, they both had a duty to maintain the stairs in safe and reasonable conditions, that the customer's stylist had the duty to warn her of icy conditions where she was admittedly aware of the ice, and that the customer was a business invitee of both. Is that not true? All of that's true. Okay, so tell me how then, given that, do you also agree that Totem has a duty to their licensees? Yes. And if Totem has a duty to their licensees and invitees, what is the duty? To keep the stairs safe, isn't it? Totem has that duty, yes. Yes, and if they have a duty, do they owe that duty not only to the customers, but to the owner, the salon? Yes. Okay, so then if I read what your policy says, and I go right to the insured, it says, each of the following is also an insured. Any person or organization to whom you're obligated by virtue of a written insured contract, which is what we have here, to provide insurance such as afforded by this policy,  Let's stop there. Has ownership. So you, Totem, have a duty out of ownership to not only the lessee's customers, but to the lessee itself. And you can suggest, there's Washington law to suggest, when we read that language, that it's absolutely clear you have no duty. Yes, I do. Well, tell me the law. Tell me the case. May I first focus on the language that the court did not recite, which we think is key to the case, which is the language that follows, it's ownership and Maintenance or use. I can go to ownership and I can go to use, and I still get your insurance company. But if I may, it says for claims arising out of the ownership, maintenance, or use, of that part of the premises that was actually leased. Well, that's exactly. The premises were leased to them. They wanted to have a pathway to those premises. They were leased to them. They owned them. They used them. The premises were there. They had to get the customers in there. That's the use of them, to get the customers there. Totem Pole owned the premises. I don't see how you get out of it. The premises here was the salon. That was what was leased. That doesn't have anything to do with it. The salon may be what they used, but getting them to the salon was the only reason to have it. And Totem owned it, and they owed a duty to them because they used it to get their customers there. But the premises leased was the salon only, and so this law did not arise out of the ownership, maintenance, or use, in our view, of the premises actually leased. I agree with this, that if it's a matter of Washington real estate law, in this case landlord-tenant, if Judge Smith is correct that it's part of the lease of the salon, you had an obligation to provide access, ingress and egress, from some other place to get to the salon that you're toast as far as the insurance policy is concerned. No, we don't. Forgive me. I did real estate law for 37 years, and your argument is baffling to me. I truly do not understand it. You're suggesting that there's this hermetically sealed place called the salon and that the landlord has no responsibility for anything other than what's in that box. That's not the real estate law. That's not landlord-tenant law. It's not here. It's not anywhere that I'm aware of. But the insurance contract insures only for ownership, maintenance, or use of that part of the premises that's leased. There may be other obligations that the owner has, but only those obligations that arise out of the use of that part of the premises leased. But just a minute. Step back. If, in fact, the salon uses the salon and the only way they can get customers to the salon is to take them down the landlord's steps, how can you say that not keeping that premises free from ICE doesn't arise out of your lease to that tenant of that space? Well, in our view, Your Honor, it applies only to events that occur on the premises that were leased. I guess you need to find me a case that says that. And the cases that we found that I would point you to are three primarily. Two are from out-of-state and one is from the state of Washington, and they're cited in our brief. Yeah, but if those are the best cases you had, it seems to me you better look very carefully. It's your duty to defend. Well, and the duty to defend is clear from the complaint that this event occurred on stairways that led to multiple locations, not just to our client's place. But it led to your client's. Among others, it did. Let me ask you another question, which worries me just a little bit about this particular matter. D wasn't listed on the declarations policy as they had been asked, or the totem pole wasn't listed on the declarations part of the policy as the salon had asked them to do. Is that the basis for a separate suit by totem pole against the salon for breach of the contract? I think the contract only required that they be identified as an additional insured, and they were, but they were identified as an additional insured as a lessor, not as a. So, therefore, totem pole could sue the salon for breach of contract for whatever damages they would need to pay, and then the salon could sue your company for causing such a suit. I don't agree with that. I think that the lease required only that totem pole be named as an additional insured, and it was an additional insured. And it wasn't an additional insured in the general way, because you have tried to make it an additional insured only for something you say of the premises. Whereas, in effect, what the salon was really saying to totem pole was, we want you, or as totem pole was saying to salon, we want you to make sure that we don't have to defend these suits anymore. We want to be an additional insured for anybody who sues you. We get to take the same insurance policy. So the fact that you didn't do this, we're going to sue you for breach of contract. The contract was limited to naming them as an additional insured, which was done for? Which was done, weren't put on the declarations. True, but it doesn't say that they're to be named as a general insured. It simply says they're to be named as an additional insured, and they were. Is that simply something we need to then decide in another suit? Whether that contract means whether they ought to be in the declarations, or whether they ought not be there, which ultimately will rely back on you, because they will subrogate you, or they will counterclaim you in. That claim, of course, is not before us. I understand. I'm just trying to look at this case as it relates to what insurance companies do in these situations. And if I could say what insurance, if we want to expand the conversation a little bit, which I think I should in light of the court's comments, these clauses requiring that tenants name landlords as additional insurers are everywhere. And all of the insurers, I'm not saying this is in the record, but in much of what the court finds. I understand it's not in the record. All of these policies have this same limitation, that it be for claims arising out of the use of the premises, because otherwise, and I want to emphasize this, otherwise, Totem Bowl would be asking for a clause that covered losses that had nothing to do with its premises anywhere in the world on any shopping center that they own. That's not a reasonable limitation. And so then we look at arising out of the premises, and that's when we look at these cases, which would suggest that you're doing what you need to do to make sure the customers can get to the premises is part of what you ought to insure under Washington law. And I think that under the Konyuk case, for example, the ways of joining are not included in the scope of the coverage that the landlord is requiring. But now just a minute. Konyuk is not applicable. Here it designated the premises, exactly the premises for which the defendant was responsible. You didn't designate any premises here at all. There was no designation. And if I look at Konyuk, they had an absolute designation of what those premises would be. In this case, the lease is what designates the premises, and the lease, after all, is the insured contract that the court has referred to here. And the lease says you should keep the stairways clear as a part of your agreement to the lessee. It does say that, but it also says that the claims covered are those that arise out of that particular part of the premises that's leased. I understand your argument, Counselor. Okay, thank you. And I did want to respond to one point. It's not clear that if there were coverage here that the Zurich American policy would be primary because there's another insurance clause that, as we see it, makes the coverage not primary but shared between the two companies. That's not something that was argued here in the Court of Appeals, but I'm simply making that point because the court asked that. If you have further questions, I'll answer them. I don't believe we do. Thank you, Counsel. Do you want to have your rebuttal? I don't know how much time you have left there. I don't know that I have anything in rebuttal. If any of you have questions. I don't have any questions. I think we don't have any other questions. Thank you. Very well. Thank you both for your argument. The case just argued is submitted, and the Court stands in recess for the day.
judges: Walter, Smith, Smith